UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:

2007 AUG 24  AM 9: 08

CLARE...
CLERK U.S. DIST. CT.
S.D. OF FL. - MIAMI

JOSEPH UMBACH,

    Plaintiff,

v.

MERCATOR MOMENTUM FUND, L.P., M.A.G.
CAPITAL, LLC, and DAVID FIRESTONE,

    Defendants.

_____/

# 07-22219

## CIV-MOORE

MAGISTRATE JUDGE
GARBER

## **COMPLAINT**

Plaintiff Joseph Umbach ("Umbach" or "Plaintiff"), by his undersigned attorneys, for his Complaint and Request for Preliminary and Permanent Injunctive Relief pending a determination of this action against defendants Mercator Momentum Fund, L.P. (the "Fund"), M.A.G. Capital LLC ("MAG Capital") and David Firestone ("Firestone") alleges as follows:

### **PRELIMINARY STATEMENT**

1.    This is an action to enforce Umbach's right (i) to receive certain proceeds from the timely redemptions of his investment in the Fund and (ii) pending a determination of this action, to immediately enjoin the Fund from wrongfully distributing any portion of such proceeds to its other investors, who would be unjustly enriched from the receipt thereof.

2.    Umbach invested $4 million in the Fund on or about April 1, 2005.

3.    The Fund, a limited partnership, is a hedge fund that is now in liquidation. Defendants allegedly dissolved the Fund in April, 2007 and are now taking steps to wind it up.

4.    Pursuant to the Fund's limited partnership agreement, investors were not

permitted to redeem their interests in the Fund prior to the scheduled termination of the Fund on February 1, 2012 unless, in the case of hardship or other special circumstances of an investor, a withdrawal was allowed at the sole discretion of the general partner (Defendant MAG Capital) upon 90 days' notice.

     5.     However, to induce Umbach to investment in the Fund, Firestone specifically amended the redemption provisions in the Fund's limited partnership agreement, whereby Umbach could redeem his investments in the Fund in accordance with the Fund's limited partnership agreement on a quarterly basis with 30 days' prior notice (the "Amendment").

     6.     Pursuant to the Amendment, Umbach redeemed $2 million of his $4 million investment on 30 days' notice on or about June 30, 2005.

     7.     In accordance with the Amendment, on or about August 25, 2006, Umbach provided 30 days' notice in connection with a second redemption request in the amount of $1.5 million, representing approximately 90% amount of the total investment.

     8.     The Fund failed to pay any portion of $1.5 million redemption request by September 30, 2006 and instead requested from Umbach a delay until November 30, 2006 to fulfill the redemption request. Umbach agreed to postpone the due date for the redemption request until November 30, 2006 on the condition that the $1.5 million request be increased to $1.8 million which represented the full amount of the investment.

     9.     The Fund agreed to increase Umbach's redemption request from a partial redemption of $1.5 million to a full redemption in exchange for a delay in payment to November 30, 2006. However, again, the Fund failed to fulfill this redemption request by such date.

     10.     In April, 2007, the Fund abruptly announced to all investors that it was liquidating all its investments and distributing the proceeds to its investors.

2

11.     To date, the Fund has wrongfully refused to acknowledge that Umbach was entitled to receive redemption payments as of the effective dates of his redemption requests. Indeed, the preliminary and permanent injunctive relief requested in this lawsuit has become necessary because Fund representatives have advised Umbach that the entire Fund is being liquidated immediately and his investment will be treated in the same manner and with the same priority as other investors who did not have similar early redemption rights as Umbach. Those other investors are not entitled to receive monies from the Fund which should have been paid to Umbach many months ago in connection with his proper and timely redemption requests.

12.     Accordingly, Umbach requests that the court immediately enjoin the Fund from distributing to any investor the proceeds of Umbach's full redemption of his entire investment which Umbach calculated to be $1.8 million request due on November 30, 2006. It is important to note that immediate interim injunctive relief is imperative here to prevent other investors from being unjustly enriched through the receipt of Fund assets that they are not contractually entitled to receive and which should have been paid to Umbach long ago. Moreover, if such funds are wrongfully distributed to such investors, Umbach's only remedy would be the nearly impossible and cost prohibitive task of first identifying each such investor and then commencing independent legal actions against each of them, wherever they are located around the globe.

Moreover, interim injunctive relief would not prejudice the other investors in the Fund because they all understood that pursuant to the Fund's limited partnership they were not entitled to redemption of their investment prior to 2012 unless the general partner allowed such redemption in its sole discretion. An interim injunction will merely require Defendants to live up to their contractual and legal obligations owed to Umbach pending this action.

THE GASSENHEIMER LAW FIRM
307 Continental Plaza, 3250 Mary Street, Coconut Grove, Florida 33133 Telephone (305) 938.0075 Telefacsimile (305) 777.8814

## PARTIES

13.    Upon information and belief, Defendant Mercator Momentum Fund, L.P. (the "Fund") is and at all relevant times has been a limited partnership organized and existing under the laws of the State of California with offices in Los Angeles, California. The Fund did actively solicit in the state of Florida investments from Umbach.

14.    Upon information and belief, Defendant M.A.G. Capital, LLC ("MAG Capital") is and at all relevant times has been a limited liability company organized and existing under the laws of the State of California with offices in Los Angeles, California. MAG Capital is the general partner of the Fund.

15.    Upon information and belief, David Firestone ("Firestone") is an individual residing in the State of California. At all relevant times, Firestone was and is the sole manager and member of MAG Capital.

16.    Upon information and belief, at all times relevant hereto, Firestone, MAG Capital, and the Fund were either the agent or principal of each other, and, in such capacity or capacities, participated in the acts and conduct alleged herein and incurred liability to Umbach therefore.

17.    At all times relevant hereto, upon information and belief, the Fund, MAG Capital and Firestone were and are the "alter egos" of each other sharing such a unity of interest and identity among and between them that any difference between or among them has ceased to exist. Upon information and belief, there exists, and at all times herein mentioned there existed, a unity of interest and ownership between and among the Defendants such that any individuality and separateness between and among them have ceased. Upon information and belief, each Defendant is, and at times herein mentioned was, a mere shell, instrumentality, and conduit through which Firestone carried on his business in the entity's name exactly as he conducted it

4

prior to formation, exercising complete control and dominance of such business to such an extent that any individuality or separateness of the Defendant entities and/or Firestone do not, and at all times herein mentioned did not, exist.

18. Upon information and belief, each Defendant entity was and is controlled and operated by Firestone as his individual business alter egos, in that the activities and business of the Defendant entities was carried out without the holding of managers', directors', partners' or members' meetings, and no records or minutes of any company, corporate or partnership proceedings were maintained. Upon information and belief, in doing the acts and omissions herein alleged, each Defendant was each acting as the alter ego of the other.

19. Plaintiff Umbach is an individual residing in this District in the State of Florida, who entered into an agreement in the State of Florida to invest in the Fund.

<u>**Facts Constituting Strong Circumstantial Evidence**</u>
<u>**of Conscious Misbehavior or Recklessness**</u>

20. Firestone is the founder of the Fund, which was established as a limited partnership to operate as a hedge fund. The Fund was operated as a typical hedge fund inasmuch as it (i) was a private investment pool that was not required to register with the Securities and Exchange Commission, (ii) was open only to accredited investors with certain minimum net worth's, and (iii) provided limited information to investors and the public about its holdings.

21. In or about January, 2005, in an effort to induce Umbach to invest in the Fund, Firestone forwarded various Fund offering documents to him, including its Confidential Private Placement Memorandum, a Limited Partnership Agreement and Subscription Agreement (collectively, the "Fund Documents") by sending the Fund Documents through the U.S. mail

5

from California to Umbach in Florida. In or about March, 2005, Firestone also forwarded the Fund's audited financials from 2004 and other Fund performance indicators to Umbach for his review by sending the documents through the U.S. mail from California to Umbach in Florida.

22. After reviewing the Fund Documents and other items from Firestone, Umbach advised Firestone that he would not invest in the Fund due to its onerous lock-up and redemption provisions. Umbach further advised Firestone that such restrictions would have a negative impact upon Umbach's investment strategy implemented with Bank of America because the bank required greater liquidity and liberal redemption rights in connection with Umbach's hedge fund investments. In particular, the Fund's limited partnership agreement's provisions did not permit the early withdrawal of a limited partner's capital investment before February, 2012, unless in the case of hardship or other special circumstances and at the sole discretion of the general partner, i.e., MAG Capital. Moreover, if redemption was allowed at the discretion of the general partner, 90 days' prior written notice was required unless the general partner allowed shorter notice in its discretion.

23. In or about March, 2005, to further induce Umbach to invest in the Fund, Firestone spoke with Umbach (who was located in Florida) on an interstate telephone call in which Firestone (who was located in California) and misrepresented to Umbach that, in the event Umbach invested in the Fund, he would be permitted to redeem any portion of his investment in the Fund on a quarterly basis with only 30 days' prior written notice and with no early withdrawal penalty. Firestone further misrepresented in that telephone call, that, in such event, the cash value of the redeemed investment would be returned to Umbach at the end of a quarter upon 30 days notice of a redemption request in accordance with the Fund's limited partnership agreement. In that telephone call, Firestone agreed to amend the Fund's limited partnership

6

agreement with Umbach to reflect this change in the agreement's investment withdrawal provisions and did so amend it in writing.

24.    In reality at that time, Firestone intended not to honor a redemption request by Umbach if the request interfered with Firestone's business plans for the Fund. In addition, in reality at that time, Firestone knew that the investments that would be purchased for the Fund's portfolio were the type of investments that could not possibly be liquidated on a quarterly basis with only 30 days notice.

25.    On or about April 13, 2005, in connection with his investment strategy conducted and implemented with Bank of America, Joseph Umbach requested from Firestone that a written confirmation be forwarded to Bank of America from the Fund confirming the existence of the aforementioned Amendment. That same day a confirming letter was sent by Firestone (in California) by U.S. mail and facsimile to Bank of America (in Florida) and Umbach (in Florida).

26.    Relying on these misrepresentations concerning the ability of Umbach to redeem his investment in the Fund on a quarterly basis with 30 days' prior notice as described above, Umbach invested $4 million in the Fund effective on or about April 1, 2005.

27.    In May, 2005, Umbach was dissatisfied with the Fund's performance which was not consistent with the Fund's returns that had been provided to him earlier by Firestone. As a result, Umbach exercised his aforementioned quarterly right of redemption by providing 30 days' prior written notice to the Fund requesting to withdraw the amount of $2 million of his investment, effective June 30, 2005. Such amount was paid by the Fund to Umbach on or about July 5, 2005.

28.    According to a performance statement showing the value of Umbach's investment as of June 30, 2006, Umbach's investment was worth $1,993,095.51. On or about August 25,

2006, Umbach again exercised his aforementioned quarterly right of redemption by providing 30 days' prior written notice to the Fund requesting to redeem $1.5 million of his investment, effective on September 30, 2006. However, on September 30, 2006, Defendants failed to return any portion of said funds to Umbach in connection with this redemption request.

29.     Instead, on or about October 1, 2006, Firestone (in California) spoke with Umbach (in Florida) on an interstate telephone call in which Firestone stated to Umbach (1) that Firestone did not take the necessary steps to sell the Fund's portfolio securities to honor Umbach's redemption request effective September 30, 2006, (2) that the investments in the Fund were the type of investments that could not be liquidated in 30 days and (2) that he needed until November 30, 2006 to pay Umbach the Funds necessary to satisfy such outstanding redemption request. In that telephone call, Firestone misrepresented to Umbach that such a delay would permit the Fund an opportunity not only to realize significant performance gains in the Fund's underlying investments but also to liquidate the Fund's investments in order to fully satisfy Umbach's redemption request. Relying on such misrepresentations by Firestone, Umbach agreed in that telephone call to extend until November 30, 2006 as the date by which the Fund would be required to pay him his redemption proceeds, but only if the partial redemption request of $1.5 million, effective as of September 30, 2006, could be amended to be increased to the full amount of his investment in the Fund which Umbach believed to be $1.8 Million at that time. In that telephone call, Firestone agreed to increase the partial redemption effective September 30, 2006 to a full redemption of Umbach's investment effective on November 30, 2006.

30.     On or about November 27, 2006, Firestone spoke with Umbach on an interstate telephone call in which Umbach inquired about the status of his full redemption request due November 30, 2006. In accordance with the agreement referred to in the preceding paragraph,

Firestone instructed Umbach to forward a new amended redemption request in writing to the Fund confirming such amendment. At the time, Firestone represented that Umbach should receive his funds no later than December 31, 2006. Umbach followed Firestone's instruction and forwarded a letter confirming the redemption request by facsimile to Defendants on November 28, 2006 requesting payment of $1.8 million as the full amount of Umbach's investment in the Fund.

31.     According to a performance statement showing the value of Umbach's investment as of September 30, 2006, Umbach's investment was worth $1,627,060.84. In the telephone call described in paragraph 30 above, Firestone represented to Umbach that the Fund had increased approximately 10% from September 30, 2006 to November 27, 2006. As a result, Umbach calculated that his total investment in the Fund was approximately $1.8 million and thus requested redemption of that amount in the letter faxed to Defendants on November 28, 2006 described in paragraph 30 above.

32.     However, Defendants failed to pay Umbach any money whatsoever by December 31, 2006 or afterwards. On or about April 25, 2007, Umbach received a letter from Defendants sent through the U.S. mail from California to Florida abruptly stating for the first time that the Fund would be dissolved and wound-up. The letter does not state whether any of Umbach's redemption requests described herein will be fully satisfied in connection with the Fund's winding up.

33.     On or about August 17, 2007, the defendants' attorney (Ricardo Hollingsworth, Esq., a partner in the international law firm of Kirkpatrick, Lockhart, Preston, Gates & Ellis, LLP) informed Umbach's attorney that, notwithstanding the quarterly redemption rights with 30 days' prior written notice provided to Umbach, the aforementioned redemption requests will not

be fully satisfied and that Umbach will be treated in the same manner and priority in the same manner as all other investors in the Fund in connection with its winding-up and distribution of assets, including those who did not have similar redemption rights as Umbach.

34.     Without explanation, Mr. Hollingsworth also stated to Umbach's attorney that Umbach would have to "file papers" to obtain full and proper payment from the Fund despite the existence of the Amendment and Umbach's exercise of his redemption rights.     Mr. Hollingsworth also stated that Firestone knew at all relevant times that most of the investments that were purchased for the Fund's portfolio were the type of investments that could not possibly be liquidated quickly to satisfy a redemption request with only 30 days notice.

35.     On July 18, 2007, Defendants sent Umbach a letter through the U.S. mail from California to Florida stating that a distribution of the Fund's assets to all investors would be made in August, 2007.

36.     In addition, according to performance statements sent by Defendants to Umbach, the net asset value of the Fund has significantly declined from the effective dates of Umbach's redemptions (September 30, 2006 amended to November 30, 2006) to the present. According to a performance statement showing the value of Umbach's investment as of September 30, 2006, Umbach's investment was worth $1,627,060.84. According to a performance statement showing the value of Umbach's investment as of December 31, 2006, Umbach's investment was worth $1,421,810.00.     According to a performance statement showing the value of Umbach's investment as of June 30, 2007, Umbach's investment was worth only $1,093,943.00, a decline of approximately 23% in 6 months.  As a result, Umbach could not receive the amount of funds he is contractually entitled to receive by virtue of his earlier redemptions if Fund proceeds are distributed to other investors without regard to Umbach's exercised redemption rights.  In other

words, there are insufficient funds in the Fund to pay Umbach to fully satisfy his timely redemptions if all the percentage ownership interests in the Fund are treated in the same manner during the liquidation and wind up of the Fund.

## ACTUAL KNOWLEDGE AND OPPORTUNITY

37.     Upon information and belief, at all relevant times, Firestone was the sole manager and member of MAG Capital.  Firestone controlled each and every decision made by the Fund and/or MAG Capital, including, without limitation, the contents of all correspondence emanating from said parties.  Firestone was the sole person responsible for buying and selling investments in the Fund, calculating the value of such investments, controlling the distributions and redemptions of investments from the Fund, and disseminating to investors all information concerning the Fund.

## MOTIVATION FOR THE IMPROPER CONDUCT

38.     Defendants including Firestone  were motivated to commit fraud and to misrepresent to Umbach that his investment was redeemable on 30 days' notice of a request for redemption because the compensation of MAG Capital and Firestone was directly tied in to the total amount of money under management by the Fund.

39.     First, under the limited partnership agreement for the Fund, the Fund's general partner (MAG Capital which is owned entirely by Firestone) was entitled to receive from the Fund an annual "management fee" of 1.75% of the Fund's total net assets.  By inducing as many investors as possible to invest money in the Fund, including Umbach, through misrepresentations, MAG Capital and Firestone would each benefit by increasing the total money generated from MAG Capital's guaranteed 1.75% yearly management fee of the Fund's

net asset value.

40.     Second, under the limited partnership agreement for the Fund, MAG Capital was also entitled to an "incentive fee" from the Fund equal to 20% of the cumulative net increases in the Fund's total net assets for that quarter above 5% resulting from investment and trading of the Fund's assets.  Accordingly, MAG Capital and Firestone were motivated to obtain as much money as possible from investors like Umbach to invest in to the Fund.  Moreover, with more money to invest and grow in the Fund, the greater the amount of the "incentive fee" generated by MAG Capital.  As sole owner of MAG Capital, Firestone was highly motivated by increased financial gain and opportunity to make the misrepresentations at issue and induce investors to invest in the Fund.

41.     Defendants including Firestone were also motivated to refuse to honor Umbach's redemption requests as originally promised because, with more funds to manage, the Fund would be in a better position to continue its own investment strategy.  The sale of Fund assets in order to satisfy a complete or partial redemption would likely result in realized capital gains or losses, which would be allocated to the capital accounts of the other investors.

42.     Similarly, a substantial withdrawal like Umbach's requested withdrawal which represented approximately 15% of all funds invested in the Fund would likely require the general partner to liquidate positions more rapidly than would otherwise be desirable to the general partner and would also likely adversely affect the value of the Fund's net asset value.  The resulting reduction in the Fund's assets would also likely make it more difficult to generate a positive rate of return or to recoup losses due to a reduced equity base.

## DAMAGES

43.  In August, 2007, Umbach was informed that neither of his two earlier redemption

requests would be honored by Defendants: i.e., $1.5 million, effective on September 30, 2006; and $1.8 million, effective on November 30, 2006 (amending the preceding redemption request). In fact, Umbach was advised by Defendants that his investment in the Fund would be treated in the same manner and with the same priority as all other investors in the Fund during the wind-up and liquidation of the Fund.

44.     As a result, Defendants intend on distributing to other investors in the Fund an unknown portion of the redemption amounts referred to in the previous paragraph that were otherwise due and payable earlier to Umbach. Accordingly to a letter from the Fund to Umbach, dated July 17, 2007, Defendants intend on distributing to Umbach the value of all of his interests in the Fund as of June 30, 2007, rather distributing to Umbach the investment amounts set forth in his redemption requests as of the date set forth therein (November 30, 2006 amended from September 30, 2006). Thus, assuming that Defendants proceed with paying Umbach the value of his entire investment in the Fund as of June 30, 2007, then Umbach's damages would be calculated by subtracting the value of his investment as of June 30, 2007, ($1,093,943.21 according to performance statements for the Fund provided by Defendants) from the value of his investment as of November 30, 2006 (approximately $1,627,060.84 according to performance statements for the Fund provided by Defendants), i.e., approx. $533,117.63. More likely, however, is that Defendants could not liquidate the Fund entirely by June 30, 2007 and that liquidation will take many more months or years. Under such a scenario, the value of Umbach's investment will continue to decrease and a final calculation of damages cannot occur until complete liquidation of the Fund.

45.     In order to induce Umbach to purchase and maintain an interest in the Fund, Defendants intentionally engaged in a pattern of fraud, including, without limitation, wire fraud

and mail fraud to defraud Umbach of money or property in violation of 18 U.S.C. §§ 1341 and 1343 (Mail and Wire Fraud). Firestone and the other Defendants made repeated use of the mails and wires to further their violations of the Securities Exchange Act of 1934 by intending and inducing Umbach to purchase a limited partnership interests in the Fund by causing him to rely on misrepresentations. For example, in furtherance of their scheme to defraud Umbach, Firestone (in California) spoke on the telephone with Umbach (in Florida) to solicit his purchase of a limited partnership interest and maintain such interest in the Fund and mailed, faxed and e-mailed numerous documents to Umbach in Florida before and after his purchase of a limited partnership interest in the Fund.

## JURISDICTION AND VENUE

46.     This court has jurisdiction pursuant to Section 27 of the Securities Exchange Act of 1934 [15 U.S.C. § 78aa] (the "1934 Act"). The claims asserted herein arise under § 10(b) and §20(a) of the 1934 Act and Rule 10b-5. Pendent jurisdiction over other claims and parties arising from the same nucleus of operative facts lies in consideration of judicial economy, convenience, and fairness to litigants. This action also arises under 28 U.S.C. 1332 (a) (1), i.e., as a civil action between citizens of different states with the matter in controversy exceeding the value of $75,000.00, exclusive of interest and costs. Venue is proper in this District.

## FIRST CAUSE OF ACTION
(Violations of Section 10(b) of the Securities Exchange Act of 1934 as amended [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] by Defendants)

47.     Paragraphs 1 through 46 are hereby realleges and incorporated by reference herein.

14

48.     Upon information and belief, from at least January, 2005, to the present, Defendants, in connection with the purchase and sale of securities in the form of limited partnership interests in the Fund by the use of the means and instrumentalities of interstate commerce and of the mails, directly and indirectly, have employed and are employing devices, schemes and artifices to defraud; have made and are making untrue statements of material fact and have omitted and are omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and have engaged and are engaging in acts, practices and courses of business which have operated and will operate as a fraud and deceit upon purchasers of such securities, all as more fully described in paragraphs 1-45 above.

49.     Defendants knew or were reckless in not knowing of the misrepresentations described in paragraphs 23 and 29 above.

50.     By reason of the activities described in paragraphs 1-45 above, Defendants have violated and are violating Section 10 (b) of the Securities Exchange Act of 1934 as amended [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] there under.

51.     As a result of such violations, Umbach has suffered damages in an amount to be computed at trial but which are greater than $75,000 and seeks rescission of his investment in the Fund.

## SECOND CAUSE OF ACTION
(Violations of § 20(a) of The 1934 Act Against Defendants MAG Capital and David Firestone)

52.     Paragraphs 1 through 51 are hereby realleges and incorporated by reference herein.

53.     Firestone acted as controlling person of each of the Fund and MAG Capital within the meaning of section 20(a) of the 1934 Act. Firestone had the power and

15

authority to cause the Fund to engage in the wrongful conduct complained of herein. By reason of his ownership of MAG Capital and managing member therein, Firestone had the power and authority to cause MAG Capital to engage in the wrongful conduct complained of herein. By reason of MAG Capital's status as general partner of the Fund, MAG Capital had the power and authority to cause the Fund to engage in the wrongful conduct complained of herein. MAG Capital controlled its employees including Firestone. By reason of such conduct, the Defendants MAG Capital and David Firestone are liable pursuant to § 20(a) of the 1934 Act.

### THIRD CAUSE OF ACTION
(Breach of Fiduciary Duties by All Defendants)

54.     Paragraphs 1 through 53 are hereby realleges and incorporated by reference herein.

55.     As a limited partnership of which Umbach was a limited partner, the Fund owed a fiduciary duty to Umbach. As general partner of the Fund, MAG Capital owed a fiduciary duty to Umbach, a limited partner of the Fund. As managing member of MAG Capital, Firestone owed a fiduciary duty to Umbach. Due to Defendants' discretionary authority to manage Umbach's investment, Defendants owed a fiduciary duty to Umbach. In breach of their fiduciary duties to Umbach, Defendants committed, among other things, the following improper acts:

> (i)     misrepresented to Umbach that all of his investments in the Fund would be redeemable quarterly upon 30 days' notice;
>
> (ii)    failed to pay Umbach the redemption amount of $1.5 million which was a partial investment in the Fund that was effective on September 30, 2006;
>
> (iii)   failed to pay Umbach the amended redemption amount of his full investment which he believed to be $1.8 million that was effective on November 30, 2006;

16

(iv)    threatened and continues to threaten to distribute funds otherwise payable to Umbach in connection with items (ii) and (iii) above to the other investors in the Fund.

56.    Defendants' breach of their fiduciary duties caused damages to Umbach in an amount to be computed at trial but which are greater than $75,000.

## FOURTH CAUSE OF ACTION
(Fraud By All Defendants)

57.    Paragraphs 1 through 56 are hereby realleges and incorporated by reference herein.

58.    In an intentional, malicious, and fraudulent scheme to cheat and defraud Umbach, Defendants made misrepresentations and omissions of material facts as described in detail in paragraphs 23, 29 and 34 above.

59.    In truth, at the time Defendants made said representations and omissions of material facts, they had no intention of fully performing the promises contained therein, purposely concealed their true intentions from Umbach, and intentionally and knowingly made false and fraudulent misrepresentations and omissions to induce Umbach to invest in the Fund.

60.    Umbach, to his substantial detriment, reasonably relied on the aforementioned misrepresentations and omissions, believing them to be true, and purchased a limited partnership interest in the Fund. But for the misrepresentations and omissions, Mr. Umbach would not have purchased the limited partnership interest.

61.    Having fraudulently induced Umbach to detrimentally rely on said Defendants' intentional misrepresentations and omissions, and having concealed their true intentions, Firestone and the Defendants proximately caused damages to Umbach in an amount to be computed at trial but which are greater than $75,000.

62.    In doing the aforementioned acts, Defendants acted maliciously, fraudulently,

17

oppressively, and despicably, and with the intent to injure and defraud Umbach, and such despicable conduct entitles plaintiff to punitive and exemplary damages to be determined at trial.

18

### FIFTH CAUSE OF ACTION
(Negligent Misrepresentation by the Defendants)

63.     Paragraphs 1 through 62 are hereby realleges and incorporated by reference herein.

64.     Given the extended discussions, correspondence and communications between Umbach and Defendants prior to Umbach's first investment in the Fund, there existed a special relationship between Umbach and said Defendants before and after Umbach's first investment in the Fund.

65.     In making the misrepresentations described in paragraphs 23 and 29 above to Umbach, the Defendants were careless in imparting the misrepresentations, had no reasonable grounds for believing the aforesaid representations to be true, or should have known them not to be true.  Umbach was expected to rely on the aforesaid misrepresentations and Defendants expressed the misrepresentations directly to Umbach with the knowledge that the misrepresentations would be relied and acted upon by Umbach.  Defendants negligently breached their duty owed to Umbach, and induced Umbach to purchase an interest in the Fund.

66.     In detrimental reliance upon the aforesaid negligent misrepresentations, Umbach purchased a limited partnership interest in the Fund.  But for the misrepresentations of the Defendants, Umbach would not have purchased the limited partnership interest. Defendants, in the course of their business, profession, or employment, and/or in the transaction with plaintiff whereby plaintiff purchased a limited partnership in the Fund and in which Defendants have a pecuniary interest, supplied false information for the guidance of plaintiff in said transaction and are thus subject to liability for pecuniary loss caused to plaintiff by plaintiff's justifiable reliance upon the information.  Defendants failed to exercise reasonable care or competence in obtaining

THE GASSENHEIMER LAW FIRM
307 Continental Plaza, 3250 Mary Street, Coconut Grove, Florida 33133 Telephone (305) 938.0075 Telefacsimile (305) 777.8814

or communicating said information.

67.     As a proximate result of the negligent misrepresentations of the Defendants, Umbach has been damaged in an amount to be proven at time of trial but which is greater than $75,000.

## SIXTH CAUSE OF ACTION
(Negligence By All Defendants)

68.     Paragraphs 1 through 67 are hereby realleges and incorporated by reference herein.

69.     As general partner of the Fund, MAG Capital owed a duty to Umbach, a limited partner of the Fund.  As a limited partnership of which Umbach was a limited partner, the Fund owed a duty to Umbach.  As a managing member of MAG Capital, Firestone owed a duty to Umbach.  In breach of their duties to Umbach, upon information and belief, Defendants committed or are committing, among other things, the following improper acts:

(i)     misrepresented to Umbach that all of his investments in the Fund would be redeemable quarterly upon 30 days' notice;

(ii)    failed to pay Umbach the redemption amount of $1.5 million which was a partial investment in the Fund and that was effective on September 30, 2006;

(iii)   failed to pay Umbach the redemption amount of his full investment which Umbach believed to be $1.8 million and that was effective on November 30, 2006;

(iv)    threaten and continue to threaten to distribute funds otherwise payable to Umbach in connection with items (ii) and (iii) above to the other investors in the Fund.

70.     As a result of such negligence, Mr. Umbach was caused to invest and maintain his investments in the Fund.  As a proximate result of Defendants' conduct, Umbach has been

THE GASSENHEIMER LAW FIRM
307 Continental Plaza, 3250 Mary Street, Coconut Grove, Florida 33133 Telephone (305) 938.0075 Telefacsimile (305) 777.8814

damaged in an amount to be proven at time of trial but which is greater than $75,000.

### SEVENTH CAUSE OF ACTION
(Breach of Limited Partnership Agreement by the Fund)

71.     Paragraphs 1 through 70 are  hereby  realleges and incorporated by reference herein.

72.     In approximately March, 2005, Umbach entered into a written limited partnership agreement with the Fund which was amended by the Amendment.  Pursuant to the Amendment, Umbach properly made the following redemption requests:

> (i)     redemption request for the return of a portion of his investment totaling $1.5 million, effective on September 30, 2006; and
>
> (ii)    redemption request for the return of Umbach's entire investment which Umbach believed to be $1.8 million, effective on November 30, 2006.

In breach of the Fund's limited partnership agreement, including the Amendment, the Fund has:

> (i)     failed to pay Umbach the redemption amount of $1.5 million that was effective on September 30, 2006; and
>
> (ii)    failed to pay Umbach the redemption amount pertaining to his entire investment in the Fund which Umbach believed was $1.8 million that was effective on November 30, 2006.

73.     As a result of said breaches of the Fund's limited partnership agreement, Plaintiff is entitled to either (1) rescission of the Agreement and restitution of Umbach's entire investment in the Fund (less redemption amounts previously received) Fund, plus applicable interest or (2) damages in an amount to be computed at trial but which are greater than $75,000.

### EIGHTH CAUSE OF ACTION
(Violations of State Law Anti-Fraud Provisions)

74.     Paragraphs 1 through 73 are hereby realleges and incorporated by reference

THE GASSENHEIMER LAW FIRM
307 Continental Plaza, 3250 Mary Street, Coconut Grove, Florida 33133 Telephone (305) 938.0075 Telefacsimile (305) 777.8814

herein.

75.     In connection with the offer and sale of securities to plaintiff, Defendants violated Section 517.301 of the Florida Statutes by directly or indirectly:

(1)     Employing devices, schemes or artifices to defraud the Plaintiff;

(2)     making untrue statements of material facts and/or omitting to state material facts necessary in order to make statements made not misleading in light of the circumstances under which they were made; and/or

(3)     engaging in transactions, practices or course of business which operates or would operate as a fraud or deceit on plaintiff, all as alleged in further detail in paragraphs 1-45 above.

76.     As a direct and proximate result of Defendants' violation and omissions of material fact, plaintiff has suffered damages.

77.     Pursuant to Section 517.312(1) and 517.312(2) of the Florida Statutes, plaintiff is entitled to rescind his purchase of interests in the Fund and recover damages as provided in Section 517.211 (3)(a), (4) and (6) of the Florida Statutes.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests the following:

(A)     immediate preliminary and permanent equitable and/or injunctive relief preventing the Defendants from distributing any monies to investors in the Fund in connection with its dissolution and winding up pending the conclusion of this action and any other appropriate remedies;

(B)     rescission of plaintiff's purchase of his interest in the Fund;

(C)     compensatory damages from Defendants to be computed at trial but which are greater than $75,000, plus interest;

THE GASSENHEIMER LAW FIRM
307 Continental Plaza, 3250 Mary Street, Coconut Grove, Florida 33133 Telephone (305) 938.0075 Telefacsimile (305) 777.8814

(D)     punitive damages in an amount to be determined at arbitration;

(E)     the costs and disbursements of this action and attorneys fees, and

(F)     such other and further relief as this Court deems just and proper.

Respectfully submitted on this 23rd day of August 2007.

> THE GASSENHEIMER LAW FIRM
> *Attorneys for Plaintiff*
> 307 Continental Plaza
> 3250 Mary Street
> Coconut Grove, Florida  33133
> Telephone:  (305) 938-0075
> Facsimile:   (305) 777-8814
>
>
> BY: _____
>     JAMES D. GASSENHEIMER
>     Florida Bar No. 959987
>     RAYMIE E. WALSH
>     Florida Bar No. 696821

23

JS 44 (Rev. 11/05)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

**07-22219**

## I. (a) PLAINTIFFS

JOSEPH UMBACH,

**(b)** County of Residence of First Listed Plaintiff   Miami-Dade
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

James D. Gassenheimer, Esq., The Gassenheimer Law Firm
307 Continental Plaza, 3250 Mary Street
Coconut Grove, FL 33133 -- Tel: (305) 938-0075 Ext. 101

## DEFENDANTS

MERCATOR MOMENTUM FUND III, L.P., M.A.G. CAPITAL, LLC, and DAVID FIRESTONE

County of Residence of First Listed Defendant    Los Angeles
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

Attorneys (If Known)

**CIV-MOORE**
**MAGISTRATE JUDGE**
**GARBER**

**(d)** Check County Where Action Arose: ☑ MIAMI- DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

| II. BASIS OF JURISDICTION (Place an "X" in One Box Only) | III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff |
|---|---|
| | (For Diversity Cases Only) and One Box for Defendant) |

DADE-07-22219-CV-MOORE-GARBER

| II. BASIS OF JURISDICTION | | III. CITIZENSHIP OF PRINCIPAL PARTIES | | PTF | DEF | | | PTF | DEF |
|---|---|---|---|---|---|---|---|---|---|
| ☐ 1 U.S. Government Plaintiff | ☑ 3 Federal Question (U.S. Government Not a Party) | Citizen of This State | | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | | ☐ 4 | ☑ 4 |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) | Citizen of Another State | | ☐ 2 | ☑ 2 | Incorporated and Principal Place of Business in Another State | | ☐ 5 | ☐ 5 |
| | | Citizen or Subject of a Foreign Country | | ☐ 3 | ☐ 3 | Foreign Nation | | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☒ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Re-filed-(see VI below)  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).

(See instructions second page):

a) Re-filed Case ☐ YES ☐ NO    b) Related Cases ☐ YES ☐ NO

JUDGE                                    DOCKET NUMBER

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (**Do not cite jurisdictional statutes unless diversity**):

§27 of SEC 1934; 15 U.S.C. §78; 28 U.S.C. §1332(a)

LENGTH OF TRIAL via   7   days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $**
1,800,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☑ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE   8/23/07

---

**FOR OFFICE USE ONLY**

AMOUNT  350.00   RECEIPT #  965462

08/24/07